THE STATE OF FLORIDA, *ex rel.* J. C. BLOCKER, *et al., Plaintiffs in Error*, v. S. S. COACHMAN *et al.* AS COUNTY COMMISSIONERS OF PINELLAS COUNTY, *Defendants in Error.*

1.  The provision of Chapter 6239, Acts of 1911, that "the qualified electors in any county in this State wishing to change their county site, shall present ——————— a petition signed by one-third of the qualified electors, who are taxpayers," etc., means that the petition shall be signed by one-third of the taxpaying qualified electors of the county.

2.  Chapter 6239, Acts of 1911, is not in its terms or purpose confined to the change of county sites that had already been permanently located.

Appealed from the Circuit Court for Pinellas County.

The facts in the case are stated in the opinion of the court.

*P. O. Knight* and *C. C. Whitaker*, for Plaintiffs in Error;

*F. M. Simonton* and *Jas. F. Glen*, for Defendants in Error.

WHITFIELD, C. J.—Blocker and others brought mandamus to compel the County Commissioners of Pinellas County to call an election upon the question of changing and establishing the county site of Pinellas county on a petition presented under Chapter 6239 Acts of 1911. A motion to quash the alternative writ was sustained, and to a judgment for the respondents the relators took writ of error.

The questions presented involve a construction of the following provisions of Chapter 6239: "An Act to provide

for the change and establishment of county sites, calling elections therefor," &c.

"Section 1. That from and after the passage of this Act the qualified electors in any county in this State wishing to change their county site, shall present to the Board of County Commissioners of such county a petition signed by one-third of the qualified electors, who are taxpayers on real or personal property, praying for a change of the location of such county site.

Section 10. The provisions of this Act shall not apply to any county having constructed a new court house within the past twenty years."

It is contended for the respondents that the requirement of section 1 that the petition shall be "signed by one-third of the qualified electors, who are taxpayers on real or personal property," means that the petition must be signed by one-third of all of the qualified electors, all of which one-third must be taxpayers on real or personal property. Such a construction does not comport with the evident intent of the lawmaking power, since the leading idea of the section is that the calling of an election to determine the question of a change of the location of the county site shall be at the instance of a stated material portion of those who are both taxpayers and qualified electors of the county. The taxpaying qualified electors are presumably a more permanent and responsible portion of the population who bear the burdens, and a given proportion of taxpaying qualified electors can be more readily and definitely ascertained and established than a given proportion of merely qualified electors. The alternative writ shows that the petition filed with the County Commissioners under Section 1 of Chapter 6239, is signed by 802 qualified electors of whom 422 are taxpayers on real and personal property in the county; that the total

number of qualified electors in the county is 2150 of whom only 1013 are taxpayers. The requisite one-third of the taxpaying qualified electors of the county is therefore only 338, while 422 of the 802 who signed the petition are taxpaying qualified electors of the county. Chapter 6239 is not in its terms or purpose confined to the change of county sites that had already been permanently located.

The judgment is reversed.

TAYLOR, SHACKLEFORD, COCKRELL AND HOCKER, J. J., concur.