STURGIS, Judge.
We consider two appeals involving separate orders in this cause.
Volusia County, a political subdivision of the State of Florida, the members of the Board of County Commissioners of said county, individually and as such members, hereinafter collectively referred to as the “county defendants”, and Sidney H. Taylor, a defendant intervenor, seek reversal of a final order in the nature of a final decree in favor of the plaintiff-appellees. The decree had the effect of setting aside a resolution of said Board holding insufficient a *40 petition under Chapter 138, Florida Statutes, F.S.A., for relocation of the county seat of said county and required said Board, within a time fixed and in accordance with procedures outlined therein, to reconsider said petitions for' relocation of the county seat and enjoined the Board, pending compliance therewith, from entering into a contract for the construction of a new county jail at the present county seat. This appeal is identified as No. D-241 of the serial numbers of this court.
Thereafter a second series of petitions under Chapter 138 was filed with said Board, and on motion of appellees the chancellor entered an order in this cause requiring the Board
“ * * * to seal said Petitions [‘Petitions’ refers to the original petition filed with the Board on August 16, 1960, and also to the second series of petitions filed with said Board on February 15, 1962] and state thereon that same are sealed by Order of this Court, and to keep said Petitions sealed, pending the outcome of the appeal heretofore taken herein [referring to the appeal in Case No. D-241], or until such time as said Board of County Commissioners, as Defendants herein, have worked out mechanics and machinery for the correct checking of said Petitions; it being the Court’s position that said Petitions shall nqt be mutilated, and that any individual, desiring to withdraw his or her name from said Petitions, may file withdrawal in accordance with law; and that upon showing made that said Board of County Commissioners, as Defendants herein, are bona fide in their desire to check said Petitions with due diligence and ready to proceed to check said Petitions, that upon such a showing and upon short order, this Court will proceed to unseal said Petitions and make same available to said Board of County Commissioners and such outside agency, or otherwise, as said Board of County Commissioners may determine, as to the checking of said Petitions.”
By a separate appeal, identified as No. D-319 of the serial numbers of this court, appellants seek reversal of said order.
The orders appealed are summary in nature, based entirely upon the pleadings, thus necessitating a somewhat detailed statement of the same.
This litigation stems from a protracted effort on the part of a substantial segment of the citizens of Volusia County to have an election called under Chapter 138, Florida Statutes, F.S.A., for the purpose of determining whether the county seat of said county shall be relocated. This suit in equity, for an injunction and other relief, was filed September 6, 1961. It was precipitated by action of the Board of County Commissioners of said county, taken July 6, 1961, rejecting the petition filed August 16, 1960, and subsequent action of the Board looking to the construction of a new county jail at the present county seat. Upon application of plaintiffs an order was entered temporarily restraining the defendant members of the Board of County Commissioners from taking any action .relating to the letting of any contract for the construction of said jail and to hold all matters pertaining to such new jail in status quo pending the further order of the court.
The complaint as finally amended is divided into three main parts:

Pcu't One

This phase of the complaint was designed to obtain relief by certiorari, the theory being that the action of the Board in rejecting the petition filed October 16, 1960, was null and void. On motion of defendants that part of the amended complaint relating to certiorari was dismissed and the appeals do not challenge that action.

Part Two

This phase of the amended complaint seeks a writ of mandamus to require the defendant members of the Board of County Commissioners to rescind its action holding said original petition insufficient, and to re *41 consider and act upon the same in accordance with certain directives as prayed. (Note: In the hereinafter discussed third part of the amended complaint, whereby in-junctive relief is sought, plaintiffs reiterated the allegations upon which the writ of mandamus was sought, and prayed for a mandatory injunction providing the same general type of relief sought by way of mandamus.)
The following facts are alleged, in substance : That on August 16, 1960, the requisite number of qualified electors of Volusia County under Chapter 138, Florida Statutes, F.S.A., filed with the Board of County Commissioners of said county a petition for an election as provided by F.S. 138.01[1] and 138.02,[2] F.S.A., and that said petition was such as to cast on said Board the statutory duty to order an election to be held upon the question of the relocation of the county seat of said county; that on July 6, 1961, said Board adopted a resolution finding:
(1) That on the date said petition was filed there were 44,243 registered freeholders in said county paying taxes on real property therein.
(2) That said petition contained the names of 18,866 persons.
(3) That 2,159 signatures on said petition were duplications and therefore eliminated therefrom.
(4) That 1,370 persons whose names appear on said petition were found not to be qualified electors and therefore eliminated therefrom.
(5) That 2,124 names appearing on said petition were signed by persons other than those whose names they purport to be and for that reason were eliminated therefrom.
(6) That 1,639 persons signing said petition requested their names to be withdrawn and for that reason were eliminated therefrom.
(7) That 364 persons signing said petition were not freeholders and for that reason their names were eliminated therefrom.
(8) That there were 11,210
“valid signatures to said petitions who are registered freeholders paying taxes on real property, provided said petitions containing said signatures are in the proper form, praying for a change of the location of the County Seat, which said Board finds it unnecessary to determine at this time.”
(9) “ * * * Said petitions are not signed by i/j of the qualified electors who are taxpayers on real property in said County, as required by Chapter 138 of the Florida Statutes of 1959, and that it is therefore not necessary to determine the number of qualified electors paying taxes on personal property only as the addition .of such names to the total number of freehold electors would only cause said petitions to be further deficient.”
It is charged that the action of the Board in adopting said resolution was illegal in the following particulars:
(a) That the Board unlawfully delegated the task of passing on the sufficiency of the petition to an agent and employee of the county. (Note: The July 6, 1961, offi *42 cial minutes of the Board reflect that prior to adoption of the resolution it received a written report on the subject of the sufficiency of the petition from one “James V. Doyle, Deputy Clerk of the Circuit Court,” whose official connection, if any, with the Board and its duties is not otherwise explained. The report, however, which does not purport to have been prepared by or under the supervision of the Board or any member thereof, contains data coinciding with the findings contained in the resolution to such an extent as to raise the inescapable inference that the findings of fact stated in the resolution exclusively originate in- and depend on said report for accuracy.)
(b) That after said petition was filed the Board unlawfully delayed action thereon for a period of more than ten months, during which period it permitted the names of 1,639 signers thereof to be withdrawn.
(c) That the Board arbitrarily deleted from said petition the names of 2,124 signers, without inquiry into the facts, solely because it was the opinion of the agent and employee of the county who checked the petition that the signatures of said signers were questionable in that they did not correspond with signatures of such persons appearing on the voter registration books of said county.
,(d) That the Board unlawfully deleted from said petition the names of 364 persons on the ground that they were not freeholders. (Note: The inference here is that such ground is insufficient because one who pays taxes only on personal property and is otherwise qualified, is entitled under the statute to sign said petition.)
(e) That the Board acted on and rejected said petition without first having ascertained the number of qualified persons required to sign the same in order to compel the Board to call an election under Section 138.02, Florida Statutes, F.S.A.
(f) That the above charged unlawful acts of the Board were called to its attention prior to action on the resolution, but no steps were taken to correct the same.
Pursuant to said phase of the complaint an alternative writ of mandamus was issued commanding the defendant members of the Board of County Commissioners to perform the following acts or show cause for failure so to do:
(a) To rescind said resolution of July 6, 1961.
(b) To restore- to the petition filed August 16, 1960, the names of all properly qualified persons who signed the same and whose names were said to have been stricken therefrom because such persons purportedly asked that their names be removed.
(c) To review on said petition the 2,124 names of signers which were stricken on the ground that their signatures were doubtful, and to ascertain by inquiry, rather than by comparison of such signatures with signatures appearing on the county registration records, whether the signatures so stricken were genuine, and if genuine, whether such persons were duly qualified signers of said petition, regardless of the precinct in which such person was registered, and to restore to said petition those persons who actually signed the same and were qualified so to do.
(d) To restore to said petition the names of those signers whose names were stricken on the sole ground that they were not freeholders.
(e) To determine the correct number of properly qualified persons who signed said petition.
(f) To determine the correct number of signers of said petition who, on the date the same was filed, were duly qualified electors of Volusia County and taxpayers on real or personal property located in said county.
(g) To thereupon determine whether said petition was signed by not less than one third of the persons who, at the time of the filing of said petition, were duly qualified electors of said county and taxpayers on real or personal property situated therein, and if such finding should *43 be in the affirmative, to proceed as required by Chapter 138, Florida Statutes 1959, F. S.A., otherwise to formally deny said petition.
(h) And upon performing said acts to report the same to the court.

Part Three

The third phase of the amended complaint realleges the facts set out in the second phase of the complaint, supra, and further alleges, in substance, that prior to commencement of this suit the plaintiffs and other persons interested' in procuring an election under Chapter 138, Florida Statutes, F.S.A., concluded that said object would be best served by filing a new petition in the premises; that to that end a new petition had been activated and was in process of being circulated, with the result that more than 14,000 qualified persons had signed the same; that it would require sixty days from the filing of this suit in which to complete circulating such new petition in an effort to obtain the requisite number of qualified signers to compel such election to be called.
It is further alleged that shortly after the defendant Board on July 6, 1961, rejected said original petition, it called for bids for the construction of a new county jail at the present county seat and that had the trial court not restrained the county defendants in the premises, the defendant members of the Board of County Commissioners would have awarded a $650,000 contract for such construction at its meeting on September 7, 1961; that it would constitute an abuse of discretion for the county defendants to let such contract until the issues of this suit are judicially determined.
It is further alleged that the county defendants proposed to construct a new jail at the present county seat upon land conveyed to the county by the city of DeLand pursuant to a deed of conveyance containing a reversionary clause to the effect that should the county seat become relocated in any place other than within the boundaries of the city of DeLand, the land, title and estate conveyed should revert to and become revested in the city of DeLand, its successors and assigns.
On the basis stated plaintiffs prayed, in substance: (1) That the county defendants be restrained from letting contracts-for construction of a new county jail until disposition of the issues raised by the suit;-(2) that a temporary injunction issue to the same effect; (3) that a declaratory decree be entered upon the question of whether the county defendants are liable for damages which might be suffered by Volusia County in the event the defendants should let contracts for the construction of a new county jail and the land upon which constructed revert to the city of DeLand pursuant to the terms of the deed by which the city conveyed certain land to the county; (4) that the court exercise supervision over the acts of the defendant members of the Board of County Commissioners in passing on the sufficiency of a new petition under Chapter 138, Florida Statutes, F.S.A., should such be filed with said Board within 60 days from the filing of this suit; (5) that the court determine whether the original petition filed August 16, 1960, is in manner and form sufficient to require an election to be called under F.S. 138.02, F.S.A., and if found to be sufficient, that defendants be directed to call such election; and (6) that in view of the reverter provisions of the deed from the city of DeLand, a declaratory decree be entered decreeing that the county defendants are without authority to expend county funds in constructing a county jail on the land conveyed to the county by said deed.
In due course the county defendants filed (1) a combined answer to the complaint and return to the alternative writ of mandamus, (2) a motion to dismiss the amended complaint as to that part seeking a declaratory decree, (3) a motion to dissolve a temporary injunction against the letting of a contract for the construction of a new jail at the present county seat pending further order of the court, *44 which injunction was issued at the commencement of this suit, and (4) sundry-motions attacking the alternative writ of mandamus issued pursuant to the second phase of the amended complaint. Each of said motions was denied.

The Answer and Return

The answer and return of the county defendants generally denied all allegations of the complaint and alternative writ of mandamus except such1 matters as appear in the public records of the county, but did not specify the latter. It is affirmatively alleged, in substance:
' (a) That a majority of the signers of the original petition merely called for an election on the question of relocation of the county seat but did not actually pray for relocation thereof. In support of this irrelevant allegation defendants attach copies of extracts from the petition clearly reflecting that the signer petitioned for an election to be called as provided by F.S. 138.-02, F.S.A., and also reflecting the obvious fact that the petitioner is not casting a vote to change the county seat but only seeks an opportunity to vote on such question.
(b) Said defendants further allege that upon filing the original petition the “circulators” thereof filed a statement admitting there were forgeries therein and requesting the Board of County Commissioners to examine the same for such defect; that said Board appointed a committee consisting of attorneys for the circulators of the petition and attorneys for the opponents thereof to suggest a procedure to be followed in passing upon the sufficiency of the petition; and that after several months such committee filed a report which was approved by the Board. (We pause here to note that there is nothing in the record on appeal identifying a particular person or group of persons as the “circulators” of said petition or indicating that the signers collectively authorized any person to represent their interest in the matter of the procedure to be followed by the Board in determining the sufficiency of the petition. Procedural matters are ordinarily within the exclusive province of the Board to determine, subject only to the general rule that the procedure adopted is in accordance with the essential requirements of the law. The appointment of such committee and its recommendations in the premises is therefore immaterial.)
(c) Said defendants further allege that said original petition contained the names of 18,866 persons; that on the date of filing thereof there were 44,243 registered freeholders in Volusia County; that it was unnecessary to determine the number of electors in said county paying taxes on personal property as of said date because, in view of the alleged proper deletion of names from said petition as hereinafter indicated, any addition to the number of electors on account of electors paying taxes on personal property would have served only to further demonstrate the deficiency of said petition in number of signers. (Note: To call an election on the question, it is necessary for the petition to be signed by not less than one third of the qualified electors of the county who are taxpayers on real and personal property in the county; and accepting 44,243 as the number of registered freeholders, and not taking into- account the number of registered persons paying taxes on personal property only, it it is seen that in any event 14,747 was a minimal number of qualified signers necessary to require an election.)
(d) Said defendants further allege that they found 2,159 signatures on said petition to be duplications, 1,370 names thereon not to be qualified electors, 2,124 names thereon to be signed by persons other than those whose names they purport to be, 1,639 persons who after signing the petition requested their names to be withdrawn therefrom, and 364 signers who were not freeholders, with the result that there were only 11,210 valid signatures of electors paying taxes on real property; that said findings, which are *45 set forth in the resolution of July 6, 1961, are the basis for the adoption of said resolution determining that said petition was insufficient in that it did not contain the signatures of one third of the qualified electors of Volusia County paying taxes on real and personal property.
(e) The county defendants further allege that the defendant county has levied and collected taxes in the sum of approximately $700,000 for the purpose of constructing a new county jail and on July 6, 1961, called for bids for such construction, which bids were received on August 25, 1961, but action thereon deferred for a period of sixty days to afford the petitioners an opportunity to seek review by certiorari of the action of the Board of County Commissioners holding said original petition insufficient. It is alleged that the “circula-tors” of said original petition were attempting to circulate a new petition for relocation of the county seat and that by their failure to seek relief in the courts by way of certiorari and by circulating the new petition for relocation of the county seat they had waived their right to review and are not entitled to relief by way of mandamus. (Note: The contention that such acts constitute a waiver is unsound. It is immaterial who circulates a petition under the statute and those who become petitioners are not bound by the acts of their co-signers or of any person not specifically authorized to represent them in the premises.)
(f) An amendment to the answer of the county defendants reflects that the county has reconveyed to the city of DeLand the land upon which it is alleged a new jail was proposed to be constructed, hence the issue relating to the legality of such construction is moot.
The answer of the defendant intervenor, a private citizen, is substantially to the same effect as the answer of the county defendants, except that in addition thereto it charges that plaintiffs are estopped to challenge the inclusion of the Board of County Commissioners because the proponents of the petition did not make timely objection to the procedure adopted by the Board in passing on the question of the sufficiency of the petition; further, that the proper procedure by which to obtain judicial review of the judgment of said Board in holding the petition insufficient is by certiorari to the Circuit Court of Volusia County and that plaintiffs did not apply therefor until the time allowed under the rules had expired; further, that petitioners abandoned the original petition and commenced the circulation of a new petition, resulting in a detriment to the “opponents” of the election sought by petitioners in that the opponents had discarded much data accumulated in the course of presenting their position before the Board in opposition to the first petition, and that it would be quite difficult, time-consuming and expensive for them to re-establish the same.
We deem it expedient to note at this juncture that the proceeding before the County Commission upon the question of calling an election pursuant to E.S. Chapter 138, F.S.A., is in no sense an adversary proceeding. The duty of the Board to call an election under the statute is strictly ministerial in character and mandatory upon the filing of a petition as provided by law. In passing on such petition the Board must necessarily determine its bona fides and to that end is empowered to exercise a sound discretion as to the validity of the signatures appearing thereon; and the Board must, of course, ascertain the qualifications of the respective signers to join in such petition. Such discretion cannot rest on guesswork, speculation or conjecture. It must be predicated on facts developed by proper inquiry and, where the rights of the citizen are involved, as is the case of one who prima facie properly signed the petition, reasonable notice and opportunity to be heard must be given and the facts must warrant it before the Board is justified in striking his name from the petition.
Every citizen of the county has a justiciable interest in the due performance by the Board of its statutory duties, no more, *46 no less; and it is in that special relation only that the defendant intervenor herein is recognized as a proper party to these proceedings. The facts alleged by the inter-venor as constituting detriment to those persons who are “opponents” to the calling of an election under the statute have no bearing on the issues.
The trial court denied plaintiffs’ motions to strike certain portions of the answers and return and plaintiffs then moved (1) for issuance of a peremptory writ of mandamus against the county defendants notwithstanding their answer and return to the alternative writ of mandamus, and (2) for a summary final decree granting an injunction restraining defendants from taking action for the erection of a new county jail pending compliance with the peremptory writ. The intervening defendant moved for a “partial summary final decree for defendants herein, dismissing-with prejudice the plaintiffs’ complaint and prayer for injunction restraining the defendants from taking any steps toward the erection of a County Jail * * which motion was denied.

'Decree Appealed in Case No. D-241

On February 12, 1962, the trial court entered an order granting plaintiffs’ said motions for summary relief, as follows:
“3. Motions for a summary final decree have been filed herein by plaintiffs and by said Sidney H. Taylor. Both of these motions relate to the matter of the proposed construction of a county jail on certain real property, all as more particularly described in the pleadings filed herein. The Court is convinced, and so finds, that it would be illegal and contrary to public policy for said Board of County Commissioners to construct said proposed jail on the .real property in question in view of the restrictions and reverter clauses contained in the deed whereunder Volusia County acquired said real property and that regardless of said restrictions and revert-er clauses it would be illegal and contrary to public policy for said Board of County Commissioners to construct said proposed jail so long as said petition is pending before said Board of County Commissioners and said Board of County Commissioners has not properly determined the sufficiency thereof. Therefore, said motion for a summary decree filed by plaintiffs is hereby granted and said motion for a summary decree filed by said Sidney H. Taylor is hereby denied and pursuant thereto it is now ordered by this Court as follows:
“A. The temporary injunction issued herein, which is now based solely on those aspects of this litigation which relate to said petition, shall remain in full force and effect until further order of this Court.
“4. The plaintiffs’ motion for a peremptory writ of mandamus is hereby granted and said Board of County Commissioners is hereby ordered and directed to complete its examination of said petition, consistent with the terms of this order and Chapter 138, FS, and to make a formal and final determination of the sufficiency or insufficiency of said petition on or before ninety (90) days from the date of this order, and upon good cause being shown the time for making such final determination may be extended for a reasonable time by this Court.
“5. This order might properly terminate at this point but this Court believes that it is its duty not only to do justice as between the parties hereto, and the citizens of Volusia County,' who have a proper interest in the outcome of this litigation, but also to see that such justice is done speedily. Serious legal questions have arisen, and will arise, in connection with the determination of the sufficiency or insufficiency of said petition by said Board of County Commissioners and it is evident that if this Court were to send the matter of said *47 petition back to said Board of County Commissioners without providing them with specific rulings on the matters that have already arisen and without providing for a speedy method whereby other questions may be determined by this Court in a simple and speedy manner, litigation relating to the sufficiency or insufficiency of said petition might continue for a long period of time and result in injury to all parties concerned. Therefore, it is now ordered by this Court that said Board of County Commissioners in considering the sufficiency or insufficiency of said petition, shall be governed by the following rules and determinations of this Court:
“A. Said Board of County Commissioners shall determine the total number of qualified electors who are taxpayers on real or personal property, as such taxpayers are herein defined, as of the date of the filing of said petition, namely on August 16, 1960.
“B. A taxpayer on real or personal property, as used herein, means a person who has paid taxes, for the proper year as hereinafter set forth, on real or personal property and for such purpose a person who has paid intangible taxes is to be considered a taxpayer on personal property.
“C. All names on said petition shall be counted if the person was living and a qualified elector and taxpayer on real or personal property on the date of the filing of said petition, namely on August 16, 1960.
“D. To be qualified as a taxpayer on real or personal property on August 16, 1960, a person must on or before said date have paid taxes on real or personal property for the year 1959.
“E. Where property is held by more than one person as tenants by the entirety or tenants in common upon which the tax was paid for the proper year as above defined by one of the parties, all parties who own an interest in said property should be counted as taxpayers thereon.
“F. No qualified elector shall be excluded because he is not a freeholder, if such person was a taxpayer on personal property in accordance with the terms of this order.
“G. The registration list of Volusia County, on the date of the filing of said petition as aforesaid, must be compared with the Volusia County ad valorem tax receipt record on real and tangible and intangible personal property for the year 1959.
“H. One-third (1/3) of the total number of qualified electors who are taxpayers on real or personal property, as such taxpayers are herein defined, will be the required number of signers needed on said petition to call an election under the provisions of 'Chapter 138, FS.
“I. Said Board of County Commissioners or its designated agents are authorized to exclude from the count of said petition those names not found to be qualified as required by Chapter 138, FS, and any duplications of names which may appear on said petition.
“J. Neither said Board of County Commissioners nor its designated agents is vested with judicial power to determine the genuineness of a signature on said petition and they cannot exclude a name from said petition upon the ground that such signature is not authentic, without first calling upon the person whose signature is in question to verify such signature or by petitioning this Court to pass upon the authenticity of such signature.
“K. Persons signing said petition may withdraw their names therefrom upon written request filed with said Board of County Commissioners, and likewise, additional names may be add *48 ed to said petition by filing the same with said Board of County Commissioners, at any time prior to the date of the formal granting or rejection of said petition by said Board of County Commissioners.
“L. In adding names, and deleting names, on or from said petition, a complete list should be kept by said Board of County Commissioners, including the dates thereof; and in rejecting any names in the count of said petition said Board of County Commissioners shall keep a list thereof, with dates of rejection, and separate lists should be kept and classified according to the reasons for such objections; the purpose of this paragraph being so that if any error is made or allegedly made by said Board of County Commissioners, this Court or any higher court can easily determine whether or not such alleged error would affect the final result, and if it is determined that error has been committed and that such error would affect the result thereof the same may be remedied by mere correction of such particular error, and without the necessity of completely reprocessing said petition.
“6. Jurisdiction is hereby retained of this cause by this Court for the purpose of entering any further order that may become necessary in connection with the processing of said petition by said Board of County Commissioners; and any question that may arise in connection with such processing of said petition, relating either to instructions desired by said Board of County Commissioners from this Court or to the propriety of any action taken by said Board of County Commissioners in such connection, may be presented to this Court for proper action or determination by a simple petition filed herein by any party hereto and called up for' hearing before this Court on reasonable notice to all other parties hereto.”
Second Order Appealed — Case No. D-319
On March 5, 1962, plaintiffs filed a verified motion alleging that on February 15, 1962,
“ * * * sealed petitions containing thousands of names of properly qualified signers were filed before said Board of County Commissioners for the purpose of calling an election to determine the County Seat of Volusia County, Florida, and said petitions were •filed both as original petitions and as additions to the petitions filed on to-wit August 16, 1960. * * * When said petitions were filed as last herein-above mentioned, people transmitting said petitions requested said Board of County Commissioners to have said pe-tions checked by a disinterested agency so that both the proponents and the opponents of said petitions could be assured that such petitions were being" carefully and honestly checked, and to keep said petitions sealed until such, checking could be inaugurated.
“So far as plaintiffs know, and are-able to learn, said Board of County-Commissioners has taken no action oru said new petitions but intends to open, the same and divulge the names of the-signers thereof. That because of the-actions of said Board of County Commissioners in attempting to thwart the-efforts of the signers of said petitions, filed in 1960 as aforesaid, plaintiffs, have reason to believe, and do believe,, and allege upon such information and: belief, that the purpose of said Board of County Commissioners in delaying action upon said petitions filed on February 15, 1962 as aforesaid, and in unsealing said petitions and making the-names of the signers thereof public, is. and would be to nullify said petitions by • allowing the opponents thereof to exert pressure' upon signers thereof to withdraw their names in the hope that a. large number of withdrawals can be- *49 filed at the last minute and without knowledge of the proponents of said petitions.”
On that premise plaintiffs prayed for an order requiring the defendant members of the Board of County Commissioners to proceed with due diligence to check said petitions filed February 15, 1962, and until the mechanics for the correct checking thereof had been worked out to keep the same sealed and the contents thereof secret. On March 9, 1962, the trial court entered the order appealed in Case No. D-319, as set out in the introduction to this opinion.
The questions of law presented by these appeals may be paraphrased as follows:
I. Is relief by mandamus available to plaintiffs under the facts and circumstances of this case?
II. Assuming an affirmative answer to the foregoing question, may such relief be afforded as an incident to a proceeding in equity, and if so, did the peremptory writ of mandamus herein properly issue to coerce the county defendants as therein provided?
III. Did the trial court err in enjoining the county defendants from constructing a new county jail at the present county seat as provided by the order appealed in Case No. D-241, serial numbers of this court ?
IV. Was it error to require the county defendants to keep under seal the petition filed February 15, 1962, under F.S. 138.02, F.S.A. as provided by the order appealed in Case No. D-319, serial numbers of this court ?

As to Question I.

The action of the Board of County Commissioners in passing on the petition herein is primarily ministerial in character, despite the fact that it exercises a limited discretionary power as hereinabove mentioned. Mandamus is available to coerce the performance of the ministerial duties imposed under F.S. Chapter 138, F.S.A., in accordance with the essential requirements of the law. State ex rel. Blocker v. Coachman, 64 Fla. 478, 60 So. 344, was an action in mandamus to compel the Board of County Commissioners of Pinellas County to call an election on the question of whether the county seat of that county should be relocated. The trial court granted respondents’ motion to quash the alternative writ of mandamus issued in that case, holding that the statutory provision requiring the petition to be “signed by one-third of the qualified electors, who are taxpayers on real or personal property” means that the petition must be signed by not less than one third of all the qualified electors, and that such one third must be taxpayers on real or personal property. The appeal in that case did not involve the same factual situation with which we are confronted, that is, proceedings by which the Board of County Commissioners is charged with unlawfully removing from the petition such a number of qualified signers as to reduce the remainder to less than the required one third necessary to compel the Board to call an election under F.S. 138.02, F.S.A. The Board of County Commissioners in the Pinellas County case found the petition insufficient on the ground that it was necessary for the petition to be signed by one third of the qualified electors of the county, and that one third of the signers must be taxpayers on real or personal property. The practical result is the same in both cases. We do not perceive any material distinction between the use of an improper formula to arrive at a result not contemplated by the statute and the adoption of an unlawful procedure for the striking of names from the petition, a procedure which did not afford the petitioner a reasonable opportunity to controvert the ground advanced for striking his name, as occurred in the case now on appeal, especially where the effect of such action is to reduce the number of qualified signers to less than the number required by the statute to trigger the election.
*50 The answers and return to the amended complaint and alternative writ of mandamus herein failed to develop a justiciable issue of fact. The trial court did not err in granting plaintiffs’ motion to summarily issue a peremptory writ of mandamus in the premises, notwithstanding the return, and to summarily issue the injunction set forth in the order appealed in Case No. D-241. It was appropriate for the trial judge, under all the circumstances and with due regard for the vexatious problems affecting the county government of Volusia County as a result of this protracted litigation, to specify the procedure to be followed by the Board of County Commissioners in passing on the pending petitions, but the order is erroneous in certain respects, as hereinafter discussed.
Paragraph 5-J of said order lays down the rule that the defendant Board of County Commissioners cannot exclude a name from the petition on the ground that the signature is not authentic without first calling upon the person whose signature is in question to verify the same “or by petitioning this Court [the Circuit Court] to pass upon the authenticity of such signature.” There is nothing in the pleadings by which to cast on the Circuit Court authority initially to pass on the authenticity of the signatures affixed to the petition. It is initially the duty of said Board to pass thereon in accordance with recognized principles of law. This paragraph does not furnish the county defendants with a competent guide as to the procedure to be followed in “calling upon the person whose signature is in question to verify such signature,” or by which to inform such person of the basis upon which his signature is questioned. For the reasons stated, said paragraph of the order is invalid and is stricken therefrom, without prejudice to the power of the trial court to amend the same as it may be advised in the light of this decision.
Chapter 138, Florida Statutes, F. S.A., is silent as to whether between the filing of a petition thereunder and final action thereon persons signing said petition may withdraw their names, and is silent as to whether during that period additional names may be added to the petition. Paragraph S-K of said order provides that upon written request filed with said Board of County Commissioners signatures may be added to or withdrawn from said petition at any time prior to the date of the formal granting or rejection of the petition by said Board. The statute does not limit the time for withdrawing or adding names to such petition and we cannot say that the trial court has issued an arbitrary or capricious directive in the premises; indeed, it appears to this court that the right to add to is a fair concomitant to the right to take from such petition.
We are not unmindful that the requirements of paragraph 5-L of said order places a somewhat onerous burden upon the county defendants, but it is plainly designed to bring a semblance of order out of what seems to be a welter of chaos. That objective should be encouraged in a controversy of this nature, especially when important functions of county government are .necessarily held in abeyance pending the outcome.

As to Question II.

As our previous discussion indicates, we find no deterrent to the granting of relief by way of mandamus as an incident to a proceeding in equity. Having held that mandamus lies to coerce the action of the Board of County Commissioners in the premises, we must assume that the peremptory writ embodied in the decree appealed would have issued in an independent proceeding in mandamus on the law side of the court. Equity jurisdiction attached in this case by reason of the injunctive relief applied for and available. It follows that relief by way of mandamus is also available pursuant to the elemental rule that equity having jurisdiction for any purpose may proceed to grant full relief, including *51 that which otherwise would he available only in a court of law. Our conclusion is fortified by the fact that equitable principles govern proceedings in mandamus.

As to Question III.

We find no merit in the contention that the court erred in enjoining the county defendants from taking action by which the county might become committed to the construction of a new jail at the present county seat until such time as the mandate issued in this cause is complied with. The very nature of the controversy is such that assuming it should become the ministerial duty of the Board of County Commissioners to call an election under F.S. Chapter 138, F.S.A., for the purpose of voting on the question of the relocation of the county seat, and assuming further that such an election should result in a change in the county seat, it is inconceivable that the citizens and taxpayers of the county should, for the sake of a long-delayed need and suddenly-recognized emergency, be saddled with what may develop to be a highly expensive and impractical if not useless appendage to the law enforcement facilities of the county, which normally should be located at the county seat. Equity has power by injunction to prevent such precipitate action, as was done in this case.

As to Question IV.

The petition filed February IS, 1962, resulting in the post-decretal order forming the subject of the appeal in Case No. D-319, is a public document. As such it is open to inspection by the public during seasonal hours and under proper precautions for its safekeeping. The order requiring said petition to be kept under seal until a future order of the trial court permits it to be opened to the public is contrary to public policy and clearly erroneous, hence said order should be and it is set aside.
This cause is remanded for proceedings consistent herewith.
Reversed in part, affirmed in part.
CARROLL, DONALD K., C. J., concurs
WIGGINTON, J., specially concurring.

. F.S. 138.01, F.S.A. provides:
“Petition to change county seat. The qualified electors in any county in this state wishing to change their county seat, shall present to the board of county commissioners of such county a petition signed by one-third of the qualified electors, who are taxpayers on real or personal property, praying for a change of location of such county seat.”

. F.S. 138.02, F.S.A. provides:
“Commissioners to order election. The county commissioners of any county in this state, upon receiving such petition as is specified in § 138.01 shall order an election to be held at the several precincts of such county for the location of such county seat, giving not less than thirty days’ notice thereof, and no person shall be allowed to vote in such elections except those qualified to vote under the general election laws of Florida.”