DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____


HILLSBOROUGH COUNTY, by and through its
Board of County Commissioners,

Appellant,

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, and
CRAIG LATIMER, in his capacity as the
Hillsborough County Supervisor of Elections,

Appellees.


No. 2D2024-1871

_____


August 19, 2024

Appeal from the Circuit Court for Hillsborough County; Emily A.
Peacock, Judge.

Samuel J. Salario, Jr., and Jessica Slatten of Lawson Huck Gonzalez,
PLLC, Tampa, for Appellant.

Kristen M. Fiore and Nancy M. Wallace of Akerman LLP, Tallahassee; and
Jason L. Margolin and Keenan Molaskey of Akerman LLP, Tampa, for
Appellee School Board of Hillsborough County.

No appearance for Appellee Craig Latimer.


PER CURIAM.

Hillsborough County, by and through the Hillsborough County Board of County Commissioners, appeals from the trial court order granting the Hillsborough County School Board's emergency petition for writ of mandamus.[1]  We affirm.

On April 2, 2024, the School Board adopted resolution 24-SB-1, which called for a referendum on an additional millage to be placed on the November 5, 2024, general election ballot.  *See* § 1011.71(9), Fla. Stat. (2023).  The resolution and the text of the referendum called for the tax to be imposed from July 1, 2025, until June 30, 2029.  *See* § 1011.73(2).  The referendum directed the County Commissioners to instruct Craig Latimer, the Hillsborough County Supervisor of Elections,[2] to place the measure on the November 5, 2024, general election ballot.  *See* § 1011.73(3).

On July 17, 2024, the County Commissioners determined that they had the authority to decide when the School Board's referendum should go on the ballot.  They passed a motion resolving to work with the School Board on the proper time to place the measure on the ballot with a recommendation of the November 2026 general election—the County Commissioners did not definitively place the measure on the 2026 ballot.

The School Board filed an emergency petition for writ of mandamus, seeking to compel the County Commissioners to direct the Supervisor of Elections to place the 24-SB-1 referendum on the 2024

---

[1] The trial court's order is a final, appealable order, and we have jurisdiction.  *See Browning v. Young*, 993 So. 2d 64, 65 (Fla. 1st DCA 2008).

[2] The Supervisor of Elections was also named as a respondent in the School Board's petition.  The trial court dismissed the petition as to the Supervisor of Elections, and that ruling is not at issue in this appeal.

general election ballot. In the trial court, the parties disputed which entity, the School Board or the County Commissioners, had the authority to decide on which ballot the referendum would be placed. The trial court granted the petition, determining that section 1011.73 vested the School Board with the right to select the general election at which the referendum would be voted on and that the County Commissioners had the ministerial duty of "calling an election" on the date selected by the School Board. This appeal followed.[3]

"In order to be entitled to a writ of mandamus the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available." *Villa Bellini Ristorante & Lounge, Inc. v. Mancini*, 283 So. 3d 972, 976–77 (Fla. 2d DCA 2019) (quoting *Huffman v. State*, 813 So. 2d 10, 11 (Fla. 2000)). Mandamus does not lie if the respondent has discretion in carrying out the duty. *City of Miami Beach v. Mr. Samuel's, Inc.*, 351 So. 2d 719, 722 (Fla. 1977). In this appeal, the County Commissioners ask us to decide whether the trial court correctly determined that they had a ministerial duty to call an election on the date selected by the School Board.

"While the granting of a writ of mandamus petition is typically reviewed for an abuse of discretion, 'to the extent our decision turns on statutory interpretation, we apply a *de novo* standard of review.' " *Bd. of Cnty. Comm'rs Broward Cnty. Fla. v. Parrish*, 154 So. 3d 412, 417 (Fla. 4th DCA 2014) (quoting *Harvard ex rel. J.H. v. Vill. of Palm Springs*, 98

---

[3] The County Commissioners' appeal automatically stayed the trial court's order. *See* Fla. R. App. P. 9.310(b)(2). On the School Board's motion, the trial court vacated the stay, and by prior order we expedited this appeal.

So. 3d 645, 647 (Fla. 4th DCA 2012)).  "The 'plain meaning of the statute is always the starting point in statutory interpretation.' " *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (quoting *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)).  "A 'statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts' and is not to be read in isolation, but in the context of the entire section." *Fla. Dep't of Env't Prot. v. ContractPoint Fla. Parks, LLC*, 986 So. 2d 1260, 1265 (Fla. 2008) (quoting *Jones v. ETS of New Orleans, Inc.,* 793 So. 2d 912, 914–15 (Fla. 2001)).  And we must "exhaust 'all the textual and structural clues' that bear on the meaning of a disputed text." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Watson*, 333 So. 3d at 169).

Section 1011.73 provides in pertinent part:

(2) MILLAGE AUTHORIZED NOT TO EXCEED 4 YEARS.—The district school board, pursuant to resolution adopted at a regular meeting, shall direct the county commissioners to call an election at which the electors within the school district may approve an ad valorem tax millage as authorized under s. 1011.71(9).  Such election may be held at any time, except that not more than one such election shall be held during any 12-month period.  Any millage so authorized shall be levied for a period not in excess of 4 years or until changed by another millage election, whichever is earlier.  If any such election is invalidated by a court of competent jurisdiction, such invalidated election shall be considered not to have been held.

(3) HOLDING ELECTIONS.—All school district millage elections shall be held and conducted in the manner prescribed by law for holding general elections, except as provided in this chapter.  A referendum under this part shall be held only at a general election, as defined in s. 97.021.

(4) FORM OF BALLOT.—

4

(a) The district school board may propose a single millage or two millages, with one for operating expenses and another for a local capital improvement reserve fund. When two millage figures are proposed, each millage must be voted on separately.

(b) The district school board shall provide the wording of the substance of the measure and the ballot title in the resolution calling for the election. The wording of the ballot must conform to the provisions of s. 101.161.

. . . .

(7) EXPENSES OF ELECTION.—The cost of the publication of the notice of the election and all expenses of the election in the school district shall be paid by the district school board.

The County Commissioners insist that they have discretion to set the date of the election because under section 1011.73(2) they have the duty to "call an election" and that the phrase "call an election" means to pick a time during which an election will be held. In support of this argument, the County Commissioners cite various definitions of "call an election" and *In re Advisory Opinion to the Governor*, 60 So. 2d 285, 287 (Fla. 1952).

In the advisory opinion, the supreme court addressed whether under section 100.111(2)(c), Florida Statutes (1951), the governor had the authority to fix the date of an election when the statute contemplated an election "to be called by the governor." 60 So. 2d at 286. At the time, section 100.111(2)(c) provided:

When a vacancy occurs later than thirty days before the first primary and before forty days prior to the general election, it shall be subject to a special first primary and if necessary seven days later a special second primary to be called by the governor. Ten days shall be allowed from the time the vacancy occurs in which to specially qualify and the name of the person nominated in the special primary shall be placed

5

on the general election ballot but in event the general election ballots have already been printed then a separate ballot shall be prepared.

60 So. 2d at 286 (quoting § 100.111(2)(c), Fla. Stat. (1951)). The court reasoned that "if a statute imposes a duty upon a public officer to accomplish a stated governmental purpose, it also confers by implication every particular power necessary or proper for complete exercise or performance of the duty that is not in violation of law or public policy." *Id.* at 287. Consequently, the court opined that the governor necessarily had the authority to fix the date of the special election because the lack of such authority would make it impossible for the governor to call the election as provided for by the then-applicable version of section 100.111(2)(c). 60 So. 2d at 287.

*In re Advisory Opinion* does not command the outcome advocated for by the County Commissioners. The statute at issue in that case and the statute at issue in this case are materially distinguishable. Section 100.111(2)(c) placed the sole authority on the governor to "call" the election. That statute did not give the authority to any other entity to *direct* the governor to do so. In contrast, section 1011.73(2) expressly gives the School Board the authority to *direct* the County Commissioners to call an election.

Further, we cannot decide this issue by defining "call an election" as it is used in section 1011.73(2) in a vacuum. Rather, we must consider the context of the statute and give effect to every clause in section 1011.73, according meaning and harmony to all of it parts. *See ContractPoint Fla. Parks,* 986 So. 2d at 1265. And while the County Commissioners argue that the legislature must have intended for them to have discretion in setting the date of the election because there must be

6

a reason for their presence in the statute, the County Commissioners' mere presence in the statutory process does not mean that they have discretion to set the date of the election. The legislature simply elected to have the County Commissioners serve as the mechanism by which the School Board's measure is placed on the ballot.[4]

This is illustrated by the context of section 1011.73, including the rights and obligations of the School Board under Florida's Constitution and part II of chapter 1011, titled Funding for School Districts. The School Board has the authority to "operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits" imposed by the Florida Constitution. Art. IX, § 4(b), Fla. Const.; *see also* § 1003.02(1)(g)1, Fla. Stat. (2024) ("[S]chool boards must . . . arrange for the levying of district school taxes necessary to provide the amount needed from district sources.").

Section 1011.71(9) provides that "a school district may levy, by local referendum or in a general election, additional millage for school operational purposes . . . . Millage elections conducted under the authority granted pursuant to this section are subject to s. 1011.73."

---

[4] County commissioners have the general authority to place questions or propositions on the ballot. *See* § 125.01(1)(y), Fla. Stat. (2023). School boards do not have this general authority. *See* art. IX, § 4(b), Fla. Const.; § 1001.42, Fla. Stat. (2023) (outlining the powers and obligations of district school boards). Although county commissioners' general authority to place questions or propositions on the ballot is subject to a majority vote of the county commissioners, § 125.01(1)(y), the more specific provision of section 1011.73(2) imposing a ministerial duty to call an election as directed by school boards controls in this case. *See McKendry v. State*, 641 So. 2d 45, 46 (Fla. 1994) ("[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms.").

Reading these provisions together, section 1011.73(2) requires that the School Board exercise its authority to levy additional millage under section 1011.71(9) by resolution adopted at a regular meeting. § 1011.73(2). Control of the wording of the substance and the ballot title lies with the School Board. § 1011.73(4)(b). And the statute empowers the School Board to direct the County Commissioners to "call an election" on the matter. § 1011.73(2). The election can be "at any time, except that not more than one such election shall be held during any 12-month period." *Id.* Further, the election can only be held during a general election. § 1011.73(3). Finally, the School Board is responsible for the associated costs. § 1011.73(7). Reading section 1011.73(2) in context with the School Board's constitutional and statutory rights and obligations, it is apparent that the School Board's directive to the County Commissioners necessarily includes the date of the election and that the County Commissioners' duty is to adhere to the date directed by the School Board—a purely ministerial task. *Cf. Volusia County v. Eubank*, 151 So. 2d 37, 45 (Fla. 1st DCA 1963) ("The duty of the Board to call an election under [chapter 138] is strictly ministerial in character and mandatory upon the filing of a petition as provided by law.").

The foregoing analysis of the plain statutory language compels our conclusion. Bolstering that conclusion is the fact that construing the statute as granting the County Commissioners' discretion to select the date of the election would give the County Commissioners the ability to upend the School Board's authority to levy additional millage and the School Board's control over the substance of the measure to appear on the ballot. One need only look to the facts of this case for demonstration. Here, the School Board exercised its tax authority and control over the substance of the measure for the ballot. That measure expressly called

8

for the tax to be imposed from "July 1, 2025[,] through June 30, 2029." In refusing to call the election as directed by the School Board, the County Commissioners have effectively overridden the School Board's decision as to the dates the tax should be imposed and its control over the language of the measure.

Accordingly, we affirm the trial court's order granting the School Board's mandamus petition. We make no comment as to additional millage proposed by the School Board—whether to approve the measure is for the voters to decide.

Affirmed.

KHOUZAM, BLACK, and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

9