662 So.2d 803 (1995)
Earlie DAVIS, Plaintiff-Appellee,
v.
JONES BALDWIN MUSIC COMPANY and Guarantee Mutual Life Insurance Company, Defendants-Appellants.
No. 27545-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1995.
*804 Patricia N. Miramon, Shreveport, for Plaintiff-Appellee.
Tara B. Cochran, Marksville, for Defendants-Appellants.
Before NORRIS and BROWN, JJ., and CLARK, J. Pro Tem.
NORRIS, Judge.
Jones Baldwin Music Company (Jones Baldwin) and Guarantee Mutual Life Insurance Company (Guarantee Mutual) appeal the judgment awarding Earlie Davis supplemental earning benefits (SEB), certain medical expenses incurred at LSU Medical Center and penalties and attorney fees. For the following reasons, we affirm.

Factual History
Davis, a former employee of Jones Baldwin, injured his back on October 29, 1992 while lifting a piano. Jones Baldwin began paying temporary total disability benefits of $153.00 a week from the date of his accident. Davis chose orthopedic surgeon Dr. Baer Rambach as his treating physician. Dr. Rambach diagnosed myoligamentous sprains to the lumbosacral region of the spine; he treated Davis from December 1992 through March 1993. Guarantee Mutual paid for this medical treatment. On March 22, 1993, Dr. Rambach issued a report recommending that Davis return to work on April 1 in a light-duty capacity for the first six weeks and "gradually graduate back" into his normal work capacity. Davis was restricted to lifting no more than 30 pounds and avoiding repetitive lifting, climbing, crawling or crouching. Dr. Rambach released him from his care and follow-up with instructions that Davis could seek another opinion if he so chose.
Davis was not able to return to work at Jones Baldwin. He could not perform his former manual labor job and the company, according to Helen Jones, had no light-duty work for him. Ms. Jones did not clearly recall the telephone conversation she had with Davis, but admitted telling the claims adjuster, Denise Taylor, in August 1993 that she had no light-duty position for Davis. Davis testified that he diligently searched for a position elsewhere within his physical limitations, to no avail. Davis has a twelfth grade education and in the past has done mostly manual labor. Ms. Taylor admitted *805 she did nothing to help Davis find a light-duty position.
On May 14, 1993, Ms. Taylor terminated Davis's benefits. Without benefits and unable to return to Dr. Rambach, Davis sought treatment at LSU Medical Center in June 1993 without the consent of either Jones Baldwin or Guarantee Mutual. Dr. Agnosti diagnosed cervical and lumbar strain, prescribed anti-inflammatory medication and recommended physical therapy. He instructed Davis to avoid heavy lifting and suggested that he be retrained for a different type of job. Ms. Taylor admitted that in June and July 1993, respectively, she received the report from LSU Medical Center, stating that Davis was restricted to light duty, and Davis's attorney's letter with several LSU reports attached. However, she refused to pay any medical bills associated with LSU Medical Center.
On June 23 Ms. Taylor asked Dr. Rambach to examine Davis again. According to Ms. Taylor, she wanted to clarify whether or not at this time he could return to full-duty work. On July 26, Dr. Rambach reiterated his opinion that Davis should return to light-duty work the first six weeks and gradually ease back to full-duty. On September 20, Ms. Taylor reinstated Davis's temporary total disability benefits retroactive to May 13 because "there was no light-duty available for Mr. Davis with his employer." R. p. 178. She admitted they paid no interest, penalties or attorney fees, though Davis had already filed his claim with the Office of Workers' Compensation back in July.
On November 1, 1993, Ms. Taylor sent Davis to Dr. Gordon Mead, an orthopedic surgeon at Highland Clinic, for an independent medical exam. Following a brief examination, Dr. Mead concluded that Davis could engage in full activity and work. Relying on this report, Ms. Taylor terminated Davis's benefits a second time on November 4, 1993.
As of March 28, 1994, Davis's condition had not changed. He was discharged from the LSU outpatient clinic with the recommendation that he continue conservative therapy.
On July 29, 1994, the hearing officer rejected Davis's claim for temporary total disability benefits, but awarded SEB of $153.00 per week from November 5, 1993 until such time as his medical or employment status changes, allowing for modification under Louisiana law. Based on Davis's testimony and the medical evidence, she found that Davis's work-related injury prevents him from returning to his former employment or other employment that requires heavy lifting; he can only perform sedentary or light-duty work. However, the defendants failed to rebut this proof by showing that Davis was able to earn 90 percent or more of his pre-injury wages at a job that was available in a reasonable geographic region. She awarded $439.00 of the $1,196.00 he claimed to have incurred for medical treatment at LSU. Finally, she awarded penalties and attorney fees for the unreasonable termination of benefits in May and November 1993.
Jones Baldwin and Guarantee Mutual appealed, assigning as error the hearing officer's award of SEB, medical expenses from LSU Medical Center and penalties and attorney fees.

Award of SEB
To recover SEB, the claimant bears the initial burden of proving by a preponderance of the evidence that a work-related injury renders him unable to earn 90 percent or more of his pre-injury wages. La.R.S. 23:1221(3)(a); Smith v. Louisiana Dept. Of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129. To rebut the claimant's proof, the employer must prove that the claimant is physically able to perform work that was available to him in his or the employer's community or reasonable geographic area. La.R.S. 23:1221(3)(c)(i); Smith, supra.
A hearing officer's findings are subject to the manifest error or clearly wrong standard of review. Smith, supra; Key v. Insurance Co. Of N. Amer., 605 So.2d 675 (La.App.2d Cir.1992). "Whether an employee has established a prima facie case of entitlement to SEB's and whether an employer has shown that the employee is capable of work offered or proven available in the reasonable geographic area are questions of fact *806 which may not be disturbed absent clear or manifest error." Bigner v. LSU Medical Center, 27,084 (La.App.2d Cir. 6/21/95), 658 So.2d 218 citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In the instant case, the defendants urge the hearing officer committed manifest error in finding that Davis satisfied his burden of proof. They contend that the medical reports showed he could return to full-duty work or manual labor without restriction as of November 4, 1993, when they last terminated his benefits.
Based on Davis's testimony and the reports of Dr. Rambach and LSU Medical Center, the hearing officer found that Davis proved he was unable to earn 90 percent or more of his pre-injury wages. Dr. Rambach's two reports and those of LSU Medical Center clearly document that Davis could perform only light-duty work, not manual labor. The hearing officer was entitled to afford greater weight to the reports of Davis's treating physicians, Dr. Rambach and Dr. Agnosti, than those of Back to Work, Louisiana Functional Assessment and Rehabilitation Center and Dr. Mead.[1]Morris v. Norco Const. Company, 632 So.2d 332 (La.App. 1st Cir.1993), writ denied 94-0591 (4/22/94), 637 So.2d 163; Durkee v. City of Shreveport, 587 So.2d 722 (La.App.2d Cir.), writ denied 590 So.2d 68 (1991); Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App.2d Cir.1987). Further, the reports issued by Back to Work do not reflect opinions of physicians or medical experts.
In addition, Ms. Jones testified that she had no position for Davis except manual labor. Davis testified that he has been actively seeking light-duty positions since March 1993, applying for jobs at nearby motels, hotels and grocery stores, but to no avail. The hearing officer did not err in finding that Davis had established a prima facie case of entitlement to SEB. See Penton v. Siemens Energy and Automation, Inc., 94-0286 (La. App. 4th Cir. 11/30/94), 646 So.2d 496; Dyer v. Gab Business Services, 613 So.2d 801 (La. App. 4th Cir.), writ denied 617 So.2d 939 (1993).
The burden then shifted to Jones Baldwin and Guarantee Mutual to prove that Davis could actually earn 90 percent or more of his pre-injury wages. However, they offered no evidence that Davis could perform a specific job that was available in his geographic region. On this record, the hearing officer was not clearly wrong to award SEB.

Medical Expenses
The defendants urge that the trial court erred in ordering them to pay for Davis's unauthorized treatment at LSU. They deny any obligation to pay for another orthopedic surgeon's treatment because Davis did not first obtain their consent as required by La.R.S. 23:1121.[2] They also deny any responsibility for bills of a physician whom they contend Davis consulted at his attorney's request and for evaluation purposes. Price v. Fireman's Fund Ins. Co., 502 So.2d 1078 (La.1987).
La.R.S. 23:1203 requires the employer to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal. Davis sought treatment for his work-related injury at LSU Medical Center only after Jones Baldwin and Guarantee Mutual terminated *807 his compensation. Defendants urge that Dr. Rambach's release of Davis from his "care and follow-up" shows Davis needed no further treatment. The hearing officer found, however, that this does not entirely negate the necessity for follow-up care to relieve Davis's pain. Davis testified that his back still hurt even after Dr. Rambach released him. In fact, Dr. Rambach in releasing Davis to only light duty noted that Davis still had some limitation of motion and continued to complain of pain. On this record, the hearing officer was not plainly wrong to find that defendants had an obligation to pay for the necessary medical treatment Davis received at LSU Medical Center. Gotte v. Magnum Electric Co., 628 So.2d 1168 (La. App. 3d Cir.1993); Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App.2d Cir.1991). The hearing officer carefully reviewed the medical bills submitted, and awarded only those expenses connected with the work-related accident and injury.[3] We find no manifest error.

Penalties and Attorney Fees
Penalties may be assessed for nonpayment of compensation unless nonpayment results from conditions over which the employer or insurer has no control[4] or if the employer or his insurer has reasonably controverted the employee's right to such compensation or medical benefits. La.R.S. 23:1201 E; Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir. 9/23/94), 643 So.2d 352. To reasonably controvert a claim, the employer and insurer must have sufficient factual and medical information to reasonably counter that provided by the claimant. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir. 8/19/94), 642 So.2d 684. Attorney fees may be awarded if the insurer acted arbitrarily, capriciously or without probable cause in failing to pay benefits. La.R.S. 23:1201.2. These provisions are penal in nature and must be strictly construed. Terro v. WMCO, Inc., 619 So.2d 639 (La.App. 3d Cir.1993). The hearing officer has great discretion in deciding whether to allow or disallow penalties and attorney fees, and the decision will not be disturbed absent manifest error. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App.2d Cir. 1991).
Ms. Taylor testified that she terminated Davis's benefits in May 1993 based on Dr. Rambach's report. As correctly noted by the hearing officer, however, Dr. Rambach released Davis to light-duty, not full-duty work, with numerous restrictions. When Ms. Taylor terminated Davis's benefits, she had not yet contacted Jones Baldwin to see whether the company had a light-duty position available for him. In fact, the company had none. Ms. Taylor admitted she had no indication that Davis had found a light-duty job, and did not help him find one. She did not reinstate his benefits until one month after Ms. Jones told her the company had no light-duty positions.
Ms. Taylor testified that she terminated his benefits again in November based solely on the IME performed by Dr. Mead. Ms. Taylor did not terminate benefits based on any treating physicians' report; in fact, she deliberately ignored the expert opinions of Dr. Rambach and Dr. Agnosti, who advised that Davis return to only light-duty work. See and compare Rodney v. Crown-Zellerbach Corp., 470 So.2d 538 (La.App. 1st Cir. 1985). Ms. Taylor knew about the treating physicians' reports, and that Davis had not been able to find light-duty work; yet, she refused to review the bills from LSU Medical Center, and then relied on one brief examination by Dr. Mead to terminate Davis's benefits. There was no justification for terminating benefits in the instant case. Rogers v. Pizza Hut, 547 So.2d 1092 (La.App. 1st Cir.), writ denied 552 So.2d 384 (1989). In light of this evidence, the hearing officer was not *808 plainly wrong to find that the defendants did not reasonably controvert Davis's claim, and that their failure to pay benefits was arbitrary, capricious and without probable cause. The award of penalties and attorney fees will be upheld.
For the reasons expressed, the judgment is affirmed. All costs are assessed to Jones Baldwin Music Company and Guarantee Mutual Life Insurance Company.
AFFIRMED.
NOTES
[1] On March 9, 1993, Jan Mobley with Back to Work documented that "based on Mr. Davis's progress in work hardening and the results of his FCE Retest he demonstrates that he is functioning between the Sedentary and Sedentary/Light work level as far as lifting and carrying capacities are concerned." She opined, however, that inconsistencies in his tests indicated symptom magnification, and that absent any objective clinical findings by the attending physician he could return to full-duty work. Inconsistencies indicative of symptom magnification had been noted in prior reports as well. Despite these reports, however, Dr. Rambach clearly did not feel Davis could return to full-duty work.
[2] La.R.S. 23:1121 B provides:

The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
[3] La.R.S. 23:1142 B, requiring the mutual consent of the payor and the employee when a health care provider incurs more than $750 in nonemergency treatment, does not preclude the instant award of $439 for necessary medical treatment rendered at LSU. Davis's assertion in brief that he needed no consent because the defendants denied coverage, La.R.S. 23:1142 E, is not relevant to the case.
[4] The defendants do not contend that the nonpayment resulted from conditions beyond their control. We therefore consider only whether they have reasonably controverted Davis's claim.