715 So.2d 112 (1998)
David NOWLIN, Plaintiff-Appellee,
v.
BRECK CONSTRUCTION COMPANY, Defendant-Appellant.
No. 30622-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*113 Neal Lane Johnson, Jr., Monroe, for Defendant-Appellant.
C. Daniel Street, Monroe, for Plaintiff-Appellee.
Before NORRIS, GASKINS and CARAWAY, JJ.
NORRIS, Judge.
The employer, Breck Construction Company, appeals a Workers Compensation Judge ("WCJ") decree ordering it to pay, inter alia, penalties of $1,500 and attorney fees of $3,500 for withholding authorization for a necessary surgical procedure and failing to pay the scheduled fee for the surgery. The claimant, David Nowlin, has answered, seeking only an increase in attorney fees for the appeal. Finding no abuse of discretion, we affirm the award of penalties and fees, and award additional attorney fees for the appeal.

Factual and procedural background
Nowlin, a construction worker, was injured on the job on July 29, 1996, moving a heavy tool rack through a doorway at a site in Sterlington. He was immediately taken by co-workers to the emergency room at North Monroe Hospital, where he was seen by an orthopedic surgeon, Dr. Scott McClelland.
Breck is self-insured; its third party claims administrator, Hewitt, Coleman & Associates of Jackson, Mississippi, first received notice of the injury on August 9. The case was assigned to Darlene Gray, a claims manager. Ms. Gray testified that she received Dr. McClelland's report on August 15 and authorized admitting Nowlin to North Monroe for a bone scan and myelogram. These tests showed Grade II spondylolisthesis with pars inarticularis defects and possible disc herniation of the S1 nerve root. The attached report, with a consultation from a neurosurgeon, Dr. John Whitley, stated that Nowlin needed a "Gill procedure with L5-S1 fusion." Dr. Whitley became Nowlin's treating physician.
On August 27, Dr. Whitley phoned Ms. Gray and recommended surgery, but the next day, according to Ms. Gray, Nowlin himself was still apprehensive. She advised him that he had the right to be examined by another physician of his choice. Nowlin chose Dr. Baer Rambach, an orthopedic surgeon in Shreveport. Dr. Rambach examined Nowlin in September and advised Ms. Gray that he agreed with Dr. Whitley's diagnosis of spondylolisthesis, Grade II, with nerve involvement, and that Nowlin needed the surgery.
*114 The following day, Dr. Whitley's office again called Ms. Gray, reporting that Nowlin was requesting pain medication and his condition was getting worse; without prompt surgery, he could sustain permanent nerve damage. Ms. Gray approved the operation, but also scheduled an examination by an orthopedic surgeon of Breck's choice, Dr. Brian Bulloch. At any rate, the operation was scheduled for Monday morning, October 28, at North Monroe.
Ms. Gray testified that after this, certain events caused her to withdraw her authorization for the surgery. On October 23, Nowlin's father-in-law phoned her, reporting that Nowlin "planned" the accident, faked the injury, was not really hurt, and was scheming to defraud Breck. The next day, Nowlin's estranged wife called with a similar report. Also, Dr. Bulloch examined Nowlin and faxed his report to Ms. Gray. Like the other three doctors, Dr. Bulloch diagnosed Grade II spondylolisthesis with impingement and traction of the L5-S1 nerve roots, and recommended surgical decompression and fusion.
Ms. Gray testified, however, that she phoned Dr. Bulloch to say she suspected a false claim because of the tips from Nowlin's family. According to Ms. Gray, Dr. Bulloch replied that Nowlin had a pre-existing pars defect which made him susceptible to spondylolisthesis; minor flexion and rotation, such as from tucking in a bed sheet, could aggravate it. Ms. Gray did not recall inquiring whether spondylolisthesis could be faked, but Dr. Bulloch later testified it was an objective finding and reliable.
The next day, October 25, Ms. Gray revoked authorization for the surgery; Dr. Whitley learned of this only when his office called to confirm authorization on the Friday before the scheduled operation. She testified that she investigated the fraud allegations "intensely," but offered no details or results of her investigation. Later she asked Dr. Bulloch for his opinion of Nowlin's pre-existing back condition and causation. She did not testify that she ever received any reply; however, in a letter of November 7 Dr. Bulloch said that despite the prior condition, it was "quite reasonable that he injured his back and exacerbated his problem as a result of the acute accident at work." He added that the surgery was "very reasonable" and "quite possibly necessary." Ms. Gray then decided that Nowlin should be examined by a neurosurgeon of Breck's choice, but she never actually scheduled this. She did approve an EMG and nerve conduction study, but by mid-November they had not been performed.
On November 12, Nowlin filed the instant rule for surgery, including a prayer for penalties and attorney fees. At the hearing on December 2, Nowlin testified and offered reports from all four doctors who had examined him and recommended surgery. Breck produced no evidence at this hearing. The WCJ granted the rule, ordering Breck to provide surgery.
Ms. Gray complied and authorized the surgery, but a fee dispute arose with Dr. Whitley. According to Ms. Gray, Dr. Whitley refused to operate without a written guarantee that he would be paid 100% of his normal fee. Ms. Gray's position was that the employer was required only to pay according to the Workers Compensation fee schedule.
Dr. Whitley ultimately performed the operation on January 22, 1997, and submitted two bills totaling $28,496.00. Ms. Gray forwarded these to AccuMed, a utilization review company under contract to Hewitt Coleman. AccuMed replied that the schedule authorized only $8,657.23 for the procedure; Ms. Gray paid Dr. Whitley that amount. The doctor contested AccuMed's explanation of benefits; on re-evaluation, AccuMed authorized an additional payment of $2,864.49, and this was paid on April 17.
On March 31, Nowlin filed the instant supplemental petition, demanding an unpaid balance of $4,238.27 due Dr. Whitley, and seeking penalties and attorney fees for failure to pay the proper amount.[1] This hearing was held in June. Dr. Whitley testified by deposition, *115 describing the surgical codes and scheduled fees for Nowlin's procedure, and concluded that the amount still due was actually $6,351.77. Ms. Gray testified for Breck, defending her decision not to approve the surgery in October (Breck had offered no evidence at the first hearing). She claimed she had no idea of the amount still claimed until a mediation conference held six days before the hearing. Ms. Gray also tried to explain how AccuMed figured medical benefits from surgical codes, but this was excluded as hearsay. Breck did not call anyone from AccuMed to explain its review process.
The WCJ ruled from the bench, ordering Breck to pay Dr. Whitley's outstanding bill, $6,351.77, and casting his deposition as cost; these portions of the order are not challenged on appeal. The WCJ further found that Breck was arbitrary and capricious for failing to approve the surgery from September 24 to December 3, 1996; she awarded attorney fees of $3,000 and penalties of $500 for this. She finally ruled that Breck was arbitrary and capricious for not paying the "total medical expense" without adequate explanation; she awarded attorney fees of $500 and penalties of $1,000 for this.

Applicable law
In case of injury compensable under the Workers Compensation Act, the employer is obligated to furnish, inter alia, necessary medical and surgical treatment. La. R.S. 23:1203 A; Spencer v. Gaylord Container Corp., 96 1230 (La.App. 1 Cir. 3/27/97), 693 So.2d 818.
Medical benefits must be paid within 60 days after the employer or insurer receives written notice thereof. La. R.S. 23:1201 E. Failure to pay such benefits shall result in the imposition of a penalty; however, the penalty is not imposed if the claim is reasonably controverted or if nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201 F(2). A claim is reasonably controverted when the employer or insurer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Davis v. Jones Baldwin Music Co., 27,545 (La.App. 2 Cir. 11/1/95), 662 So.2d 803.
Moreover, any employer or insurer who at any time discontinues payment of comp benefits, when such discontinuance is found to be arbitrary, capricious or without probable cause, is subject to the payment of all reasonable attorney fees for the prosecution and collection of the claims, as well as penalties. La. R.S. 23:1201.2.[2] An "unjustified belief" that the injury did not result from a work-related accident does not excuse the failure to pay. Nelson v. Roadway Express Inc., 588 So.2d 350 (La.1991).
Penalties are stricti juris and should be imposed only if the facts clearly negate good faith and just cause in connection with the refusal to pay. Guillory v. Travelers Ins. Co., 294 So.2d 215 (La.1974); Duncan v. State, 556 So.2d 881 (La.App. 2 Cir.1990). Nevertheless, the WCJ has great discretion to award or deny penalties and attorney fees; her decision will not be disturbed absent abuse of that discretion. Duncan v. State, supra; McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2 Cir.1991).

Discussion
By its first assignment of error Breck urges the WCJ was plainly wrong to find it arbitrary and capricious for failing to authorize surgery prior to December 2, 1996. The WCJ apparently viewed the withdrawal of authorization for surgery as discontinuance of benefits, thus invoking the "arbitrary and capricious" standard. R.S. 23:1201.2. Under the circumstances, however, we prefer to treat this claim as one for failure to furnish benefits, thus invoking the "reasonably controverted" standard. R.S. 23:1201 F(2); see also, Allen v. Louisiana Wood Moulding Corp., 29,947 (La.App. 2 Cir. 1/23/98), 706 So.2d 636.
The argument is largely factual. Although four physicians found spondylolisthesis and *116 recommended surgery, Breck contends none of them stated any opinion as to what may have caused the condition, all recognized a pre-existing pars defect, and Dr. Bulloch stated that a minor household activity such as making a bed could have precipitated Nowlin's current problem. Given these facts, Breck contends, it was justified in withdrawing authorization for surgery until the unsolicited reports of fraud from Nowlin's wife and father-in-law could be fully investigated. Breck finally argues that its situation was to Duncan v. State, supra, and Kelley v. Louisiana Limestone Aggregates, 630 So.2d 828 (La.App. 3 Cir.1993), writs denied 94-0668, 94-0679 (La.5/6/94), 637 So.2d 1047, 1048, in which serious questions of disability and causation were held to preclude the imposition of penalties and fees. Breck also attempts to distinguish the case of Smith v. Tudor Const. Co., 25,783 (La.App. 2 Cir. 5/4/94), 637 So.2d 666, in which this court imposed penalties and fees.
Nowlin did construction work for Breck, performing heavy physical labor for four years without any back problems. On July 29, 1996 he suffered sudden, disabling pain after a work-related incident and was taken directly to the hospital. All physicians who examined or treated him in the ensuing months found objective evidence (myelogram and bone scan) of spondylolisthesis and recommended prompt surgery; all said this condition cannot be "faked." On the strength of ment the accident history and consistent medical reports, Breck approved the surgery sometime in mid-October.[3]
Days before surgery, Ms. Gray allegedly received the phone calls from Nowlin's estranged wife and father-in-law, leading her to suspect fraud. Dr. Bulloch's report, faxed to Ms. Gray on October 24, made essentially the same diagnosis and recommendation as the other three doctors' reports; however, Ms. Gray testified that without Dr. Bulloch's assessment of causation, the case was no longer clear enough to warrant surgery. Ironically, his assessment supported Nowlin's claim.
Notably, at the hearing on the rule to provide surgery Breck presented no evidence to defend its decision to withhold authorization. At the second hearing, Ms. Gray claimed she got phone calls and "investigated" them, but produced no evidence to substantiate this. She also had no evidence to rebut the unanimous medical opinion that spondylolisthesis cannot be faked. The failure to produce the evidence central to the denial of the claim amounts to an absence of factual or medical information to counter the claimant's position. Balsamo v. Jones, supra. On this record the WCJ could well have felt that the tale of the tips and the alleged investigation was merely an afterthought to defeat the claim for penalties and penalties and fees;[4]Nelson v. Roadway Express, supra.
We have closely examined the cases of Duncan and Kelley, supra, upon which Breck relies. Without belaboring the facts of therein, we note the District Court in Duncan can awarded supplemental earnings benefits while finding the facts and medical evidence "highly suggestive of litigation," an assessment we did not disturb. In Kelley the Court of Appeal reversed the District Court's denial of SEB, noting a "disproportionate amount of subjective evidence in relation to the objective findings of Kelley's physicians" and affirming the denial of penalties and attorney fees. The plaintiffs' evidence in those cases was sufficiently controverted to justify denying penalties and fees; in the instant case, Nowlin's evidence was sufficiently strong and unchallenged to justify imposing them. Breck's first assignment lacks merit.
*117 By its second assignment Breck urges the WCJ was plainly wrong to find it arbitrary and capricious for failing to pay the outstanding balance of Dr. Whitley's surgical bill despite Breck's reliance on the utilization review provided by law. Since Breck initially paid a portion of the bill, this appears to be a case of discontinuance under R.S. 23:1201.2.
Breck cites the statutes creating the utilization review for workers compensation claims, La. R.S. 40:2721, et seq.,[5] contends that its review service, AccuMed, made appropriate recommendations, and that Ms. Gray acted reasonably in following those recommendations. Breck also contends, "Dr. Whitley's testimony does not indicate how much is allowable under law, so there is nothing in the record to refute AccuMed's recommendations." Br., 24. This assertion is completely without support; Dr. Whitley's deposition explains each surgical code in great detail and lists the allowable amount.[6] In point of fact, it was Breck who offered no evidence whatsoever to contest Dr. Whitley's testimony. Ms. Gray attempted to explain how AccuMed calculated scheduled fees, but her testimony was excluded as hearsay. This is not to say that Breck could not successfully challenge the doctor's choice of codes or calculation of allowable amount, but on the record presented the WCJ was clearly entitled to accept Dr. Whitley's uncontradicted testimony.
Breck finally argues that whether or not AccuMed's recommendations were correct (they ultimately were not), Ms. Gray was completely reasonable to rely on them. The statute, R.S. 23:1201.2, makes the employer liable if it arbitrarily and capriciously discontinues paying medical benefits. Other than Ms. Gray's statement that her company, Hewitt, Coleman, contracts with AccuMed for utilization review, the record is devoid of evidence to substantiate AccuMed's review process and justify Ms. Gray's reliance upon it. This court is not prepared to absolve the employer for relying on the erroneous advice of a utilization review service which the employer makes no effort to defend. The WCJ was not plainly wrong to assess penalties and fees for Breck's failure to pay the balance of Dr. Whitley's bill.
By his answer to appeal, Nowlin requests an additional award of attorney fees for handling Breck's appeal. An increase is appropriate when the defendant appeals, obtains no relief, and the appeal has necessitated additional work for plaintiff's counsel, provided the plaintiff properly requests the increase. La. C.C.P. art. 2133; Smith v. Tudor Const. Co., supra; Allen v. City of Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123. Under the circumstances, an increase in the attorney fee award of $1,500.00 is appropriate. Smith v. Tudor Const. Co., supra. The decree will be amended accordingly.

Conclusion
For the reasons expressed, the decree of the WCJ is affirmed insofar as it assessed penalties and attorney fees for Breck's failure to authorize surgery between October 24 and December 3, 1996, and its failure to pay the outstanding balance of Dr. Whitley's surgical bill. The decree is also amended to award an additional $1,500 in attorney fees for the appeal. Costs of appeal are assessed to the defendant, Breck Construction Company.
AMENDED AND AFFIRMED.
NOTES
[1] The supplemental petition also included a claim by Dr. Whitley for $10,240 for "last minute wrongful cancellation of the surgery which left his office with no time to schedule any other surgeries or patients." This aspect of the claim was dismissed by exception of no cause of action and has not been appealed.
[2] The texts of R.S. 23:1201 E and 1201.2 quoted in appellant's brief are incorrect, having been superseded by La. Acts 1995, No. 1137, § 1, which took effect 13 months before the instant injury. See, Balsamo v. Jones, 28,885 (La.App. 2 Cir. 12/11/96), 685 So.2d 1140, n. 3.
[3] The exact date of authorization is unclear from the record. Ms. Gray testified that Dr. Whitley's office phoned on October 16 to schedule surgery for October 28, and she approved it; Nowlin testified that he decided to have the surgery on October 21; Dr. Whitley testified that Nowlin signed the consent form on October 22.
[4] In fact, Breck's conduct also satisfies the more exacting standard of "arbitrary and capricious" conduct which activates penalties and fees for the discontinuance of benefits under R.S. 23:1201.2.
[5] These statutes are incorrectly cited in appellant's brief as R.S. 40:2701, et seq.
[6] For example, Dr. Whitley testified that the first surgical code, "63047-22," stood for a single-level laminectomy with decompression of one or both nerve roots and that it was more complicated than usual; considering the complication factor, the allowable amount was $3,664.70, of which AccuMed recommended paying only $1,691.40. Dr. Whitley addressed every code with such specificity.