736 So.2d 290 (1999)
Ed ODOM, Plaintiff-Appellee,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellant.
No. 31,826-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*292 Theus, Grisham, Davis & Leigh by David Nelson, Monroe, Counsel for Appellant.
Rhymes & Lucas by Michael Rhymes, Monroe, Counsel for Appellee.
Before BROWN, STEWART, and CARAWAY, JJ.
BROWN, J.
This is a workers' compensation case. The Workers' Compensation Judge ("WCJ") found that claimant, Ed Odom, suffered an on-the-job injury and was entitled to reimbursement for his related medical expenses. The WCJ also assessed defendant, International Paper Company ("IP"), with penalties and attorney fees. From the WCJ's adverse judgment, IP has appealed. We affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
Claimant, Ed Odom, works as a service operator II at IP's Bastrop mill. On October 15, 1996, Odom was scheduled to report to work before 7:00 a.m. Odom recalled arriving at the mill at 6:50 a.m. Jesse Shelton, the security guard on duty at the gate, however, reported Odom's arrival time to be 7:16 a.m. Odom's supervisor, Lloyd "Buddy" Richards, Jr., believing that Odom was late, confronted him.
Odom described the event as follows:
... Mr. Richards asked me why I was late and I told him, I said, "I wasn't late." I said, "My buddy wasn't on his job for me to let him off at the proper time ... I went into the office and he was sitting in the office." And Buddy told me, "You're late." I said, "I was not late." And when I said that, I said that other people come in later than I did at this particular time. And when I said that, Buddy grabbed me and when he grabbed me he said, "I tell you what you go and do your job." And when he grabbed me he turned me and told me to go do my job.
Odom related that Richards grabbed him on his right arm or shoulder. Odom told Richards not to grab him again and Richards apologized.
Richards recalled that Odom was "very late" to work and that Odom admitted that he was late. Richards asked Odom why he was tardy and Odom began asking him about safety problems with the machinery. Richards stated:
[Odom] was getting louder and we were already having to talk loud because we were on the wet end. So I said, "Ed, go to your job. We'll discuss this later." Well, he wouldn't go. So that's when I caught him right on his arm there and I attempted to turn him. I said, "Ed," and I pointed, I said, "Go to your job." Well he jumped back and he said, "You pushed me. You pushed me. I'm a man. You don't suppose [sic] to touch me. Don't put your hands on me."
Richards denied that he pushed Odom; according to the supervisor, he only grabbed Odom's arm in an effort to turn him. Richards stated that he apologized twice for touching claimant to make sure that Odom heard him over the loud machinery. Richards said that Odom never complained to him about being hurt as a result of the incident, nor did he miss any work.
Steven Cox, a machine supervisor at the plant, witnessed the incident. He stated that he first saw Odom that morning between 7:15 and 7:20 a.m. Cox noted that he pointed at his watch to indicate to Odom that he was late. About 20 or 30 minutes later, Cox testified that he witnessed the following:

*293 [Richards] and Ed Odom ... speaking, you know, close together as most people do in a paper mill to understand each other.... I did overhear some of the conversation Buddy was talking to Mr. Odom about, you know, why he was late. Then something was said by Mr. Odom about ... why we had not disciplined Robert Fletcher or we know that Robert comes in late all the time and we don't do anything about him.... [T]here was a comment made by Mr. Odom, ... trying to imply that we, as supervisors for IP, don't particularly care about safety.
Cox described the conversation as louder than he would have expected but he did not characterize the exchange as angry or agitated. He said:
Mr. Richards ... as they were standing chest to chest, Mr. Richards reached with his left arm and grabbed Mr. Odom on the shoulder or put his hand on his shoulder and attempted to turn him in the direction of the dry end of the machine and said, "Go do your job." At that time I noticed Mr. Odom, he more or less kind of jumped back, raised his arms into the air rather quickly, you know, and threw his arms up, you know, "Don't push me," or "Don't touch me, I'm a man, you don't have to push me."
Cox said that it did not appear to him that Richards pushed Odom. After the incident, Richards immediately apologized for touching Odom.
Odom did not go to the first aid station at the plant. The chief shop steward, James Quarrels, was nearby and spoke to Odom after the incident; he stated that Odom wanted to make a record of the event for the union. Odom said that he wanted to pursue the issue because, "He grabbed me and if I had ... grabbed him I wouldn't have had a job."
Odom testified that a couple of days after the incident his shoulder began to bother him and that he called first aid for permission to see a doctor. Odom did not make a formal report of the injury until November 12, 1996.
On October 23, 1996, IP held a meeting where Odom told several management and union personnel about the incident. Odom said nothing at the meeting about the pain in his shoulder. He claims that he had already notified IP about his injury when he called the first aid station. He related that personnel in first aid referred him to Dr. Carter Cox, whom he saw on November 1st. Odom noted that Dr. Cox gave him pain medication which made him sick. Thereafter, he consulted another doctor, Doug Brown, on November 19th. Dr. Brown diagnosed Odom with mild subluxation of the right shoulder with anterior capsulitis and referred him for physical therapy, which Odom completed. Odom continued to work during the course of treatment.
In January 1997, IP reimbursed Odom a total of $388 for medical expenses. At this time, Patty Jones, a senior field investigator for Helmsman Management and Liberty Mutual, the company that IP uses to handle its workers' compensation claims, investigated Odom's claim. She learned from an IP employee that another man, Anthony Lollie, claimed to have been in a fistfight with Odom two weeks before the incident between Richards and Odom. Lollie related to Ms. Jones that he had fought with Odom in a mall parking lot over a personal matter and testified that he hurt Odom "in every way that I could have I mean kicking and beating him ... it got pretty brutal there because ... at the time I lost control ... of the situation." Lollie then related that some time later, he met with Odom at the home of a mutual acquaintance, Carolyn Harris, and that Odom paid him $450 not to tell anyone from IP about the fight. Odom admitted that he had words with Lollie, but vehemently denied that he had been in a physical altercation with him or that he had paid Lollie any money. Ms. Harris also spoke to Ms. Jones, although she did not testify. Pursuant to claimant's hearsay *294 objection, the WCJ did not allow into evidence Ms. Jones' recap of what Ms. Harris related to her.
As a result of Ms. Jones' investigation, IP refused to pay any further medical expenses. Ms. Jones testified:
All investigation indicated that it was not anything other than just [Richards] simply touching Mr. Odom and turning him and telling him to get to his job site to go work. That was supported by witnesses. Also, the fact that there was not any report of any injury from Mr. Odom until several weeks later. This incident occurred on October 15th of 1996 and he did not tell anyone with IP management that he was injured until November 1st of 1996. And the there was tension because there was a grievance going on a Union grievance and it was just all the facts with all what the witnesses had told me and the fact that the injury the incident did not appear to be the type of incident that would have caused an injury and the fact that there I did have knowledge of Mr. Lollie's situation with Mr. Odom. And all of those factors together made us question the claim.
In June 1997, Odom filed a disputed claim for medical expenses, noting that his un-reimbursed medical bills totaled $1,283.10. Trial of the matter was held on June 11, 1998.
After hearing all of the evidence, the WCJ found that Odom's shoulder injury resulted from the incident with Richards. The WCJ noted that several witnesses testified that Richards attempted to turn Odom back to the work area. The WCJ discredited James Lollie's testimony because of his admission that he accepted money to remain silent about the fight and discounted Lollie's testimony because even if true, the timing of Odom's complaint of shoulder pain coincided with the incident at work, not with the alleged fight which occurred two weeks before. The WCJ ordered IP to reimburse Odom for his medical expenses, assessed penalties of $2,000 and awarded attorney fees of $5,000. It is from this judgment that IP has appealed.

DISCUSSION

Entitlement to Benefits
IP first asserts error in the WCJ's finding that Odom's shoulder injury arose out of the incident between claimant and his supervisor.
A claimant who suffers personal injury by accident arising out of and in the course of his employment is entitled to compensation benefits. La.R.S. 23:1031(A). In the event of a work-related injury, the employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Quinones v. USF & G, 93-1648 (La.01/14/94), 630 So.2d 1303; Woods v. Ryan Chevrolet, Inc., 30,206 (La.App. 2d Cir.02/25/98), 709 So.2d 251, writ denied, 98-1169 (La.06/05/98), 720 So.2d 689. The claimant does not necessarily have to establish the exact cause of the disability, but he must demonstrate by a preponderance of evidence that the accident had a causal connection with the injury. Id.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Smith v. Louisiana Dep't of Corrections, 93-1305 (La.02/28/94), 633 So.2d 129. The issue to be resolved by the appellate court is not whether the WCJ was right or wrong, but whether the factual conclusion was reasonable. Banks, supra; Freeman v. Poulan/Weed Eater, 93-1530 (La.01/14/94), 630 So.2d 733; Stobart v. State, 617 So.2d 880 (La.1993).
Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Banks, supra; *295 Stobart, supra. Thus, if the trier of fact's findings are reasonable in light of the record viewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, supra; Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La. 1990).
Considering the record as a whole, we are unable to say that the WCJ was clearly wrong in finding that Odom's shoulder injury was caused by the actions of Richards, claimant's supervisor. Both Odom and Richards, as well as the nearest eyewitness, Cox, testified that the supervisor put his hand on Odom's shoulder and tried to turn or twist him toward his work area. The testimony also establishes that Richards used some degree of force or pressure on Odom's arm in an attempt to redirect claimant to his work station. Furthermore, as noted by the WCJ, Odom's complaint about pain in his right shoulder began after this incident, which was some two weeks after Odom's alleged fight with Lollie. While Odom did not immediately notify IP of his injury, he consistently told his treating physicians that his shoulder pain was related to the incident with his supervisor. Although IP makes a compelling case, we may not substitute our view for that of the WCJ.[1]

Exclusion of Evidence
In its second assignment of error, IP contends that the WCJ erred in excluding from evidence the written statement of Ms. Jones, IP's claims investigator, relating what she was told by Ms. Harris, the alleged witness to Odom's attempt to pay Lollie to lie about their fight.
The Louisiana Supreme Court recently addressed the admissibility and use of hearsay evidence in workers' compensation proceedings in Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.03/04/98), 708 So.2d 375. In Chaisson, the supreme court held that to give effect to the more relaxed evidentiary standards set forth in La.R.S. 23:1317, the WCJ has the discretion to admit hearsay evidence and that such evidence can qualify as competent evidence provided that it has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon. Furthermore, the court advised that this determination must be made on a case-by-case basis and that the reviewing court must evaluate the competency of the evidence under the manifest error standard. Chaisson, 708 So.2d at 382.
In the instant case, the WCJ found the offered evidence to be inadmissible because:
[T]he reason ... is ... because of the fact that this is not a copy of the recorded statement but it's Miss Jones' version of what was told to her by Miss Harris. I ... would have given it a little more credibility if it had been the recorded statement itself or a transcribed version, but these are Miss Jones' words or her interpretation of what Miss Harris told her, which I think makes it even more of a hearsay statement.
Obviously concerned about the reliability of the secondhand information, the WCJ excluded Ms. Jones's recap of Ms. Harris's statement. We are unable to say that the WCJ erred in disallowing this evidence.[2]

Attorney Fees and Penalties
According to IP, an award of penalties and attorney fees was not justified because it acted reasonably in handling Odom's claim.
In addition to weekly benefits, employees injured in work-related accidents are entitled to receive all necessary medical and surgical treatment. La.R.S. 23:1203(A); Nowlin v. Breck Construction *296 Co., 30,622 (La.App. 2d Cir.06/24/95), 715 So.2d 112; Hill v. Manpower-Collier Investments, 30,444 (La.App.2d Cir.04/08/98), 712 So.2d 560.
If an employer fails to pay benefits, a penalty and reasonable attorney fees may be assessed unless the claim is reasonably controverted or if the nonpayment results from conditions over which the employer had no control. La. R.S. 23:1201(F)(2); Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885; Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140. La. R.S. 23:1201.2 also provides for an award of attorney fees when an employer's or insurer's discontinuance of benefits is arbitrary, capricious or without probable cause.
As recently set forth by our supreme court in Brown, supra, to determine whether a claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Id. at 890.
Determinations concerning penalties and attorney fees are essentially questions of fact. The WCJ has great discretion in determining whether to allow or disallow penalties and attorney fees and her decision will not be disturbed absent manifest error. Douglas, supra; Davis v. Jones Baldwin Music Company, 27,545 (La.App.2d Cir.11/01/95), 662 So.2d 803.
We find that the information IP developed through its investigation did provide a sufficient factual basis to reasonably counter Odom's claim. The incident at the mill was an insignificant touching with no immediate complaints of injury. Evidence of the fight with Lollie and the payment of $450 in hush money, together with testimony that Odom's sole concern at the time of the incident was making a union complaint, was sufficient information for IP to reasonably controvert the claim.
This case does not involve a discontinuation of benefits. Instead, IP, in the course of its determination of whether there was in fact a compensable accident, paid some of Odom's initial medical expenses. Thereafter, based upon its position that Odom's injury was not work-related, IP refused to pay medical benefits.
As noted by the supreme court in Brown, supra, unreasonably controverting a claim requires action of a less egregious nature than that required for arbitrary and capricious behavior. Even if this were a case of discontinuation of benefits, however, because of our finding that IP reasonably controverted Odom's claim, we implicitly find their behavior not to be arbitrary, capricious or without probable cause.

CONCLUSION
For the reasons set forth above, the judgment of the WCJ awarding claimant, Ed Odom, reimbursement for his medical expenses, is AFFIRMED; the award of penalties and attorney fees is REVERSED. One-half of the costs are assessed to each party.
NOTES
[1] Our finding on this issue implicitly renders moot a discussion of IP's assignment of error urging fraud on the part of Odom.
[2] This evidence, however, was clearly relevant to determine whether an award of penalties and attorney fees was warranted.