STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 08-980

MARVIN W. BUXTON

VERSUS

IOWA POLICE DEPT.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 04-05071
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Michael G. Sullivan, and Shannon J. Gremillion, Judges.

AFFIRMED.

Christopher Richard Philipp
Attorney at Law
P. O. Box 2369
Lafayette, LA 70502-2369
(337) 235-9478
Counsel for Defendant/ Appellant:
Iowa Police Dept.

J. Bryan Jones, III
Attorney at Law
P. O. Box 8841
Lake Charles, LA 70606
(337) 598-2638
Counsel for Plaintiff/ Appellant:
Marvin W. Buxton

**GREMILLION, Judge.**

The workers' compensation dispute before the court involves the Iowa Police Department's (hereafter "Iowa") denial of medical and indemnity benefits to former police officer, Mr. Marvin Buxton ("Buxton"). Initially, Iowa tried the matter and defended based upon Buxton's refusal to submit to a toxicological screen for illicit drugs. The workers' compensation judge ruled in favor of Iowa, but this court reversed and remanded. *Buxton v. Iowa Police Dep't.*, 06-1384 (La. App. 3 Cir. 3/7/07), 952 So.2d 922, *writ denied*, 07-0719 (La. 6/1/07), 957 So.2d 176. Following trial, judgment was rendered in favor of Buxton. Iowa appeals, and we affirm for the reasons that follow.

## FACTS

On May 7, 2004, Buxton was patrolling the Town of Iowa when a call for assistance came from the Lake Charles Police who were engaged in a high speed pursuit of a motorcyclist. This fugitive happened across Buxton's path, who maneuvered his squad car to apprehend. In his dash around the car, the motorcyclist struck Buxton's cruiser, causing what can only be described as minor damage. Buxton claimed that he was exiting the cruiser as the collision occurred, and that the door struck him on his head.

Buxton finished his shift approximately four hours later. His first presentation to a health care provider was to his family doctor, Dr. Young Bin Kang, who diagnosed Buxton with neck pain, headaches, and a left hand contusion on May 7, 2004. Buxton also complained of low back pain at that time.

Buxton saw Dr. Kang again on May 11, 2004, with continued complaints of headache, back pain and neck pain. He complained at that time of his pain

1

progressing to the point of nausea on four occasions. On May 18, Buxton returned complaining of a knot on the back of his neck and headaches. Dr. Kang's diagnosis on this occasion was again of neck and back pain and headaches.

The June 7 visit with Dr. Kang is of note because Buxton's wife apparently urged that an MRI be performed in an attempt to see what was wrong with Buxton's back. Dr. Kang did not feel that an MRI was warranted but decided to keep that in mind for the future. Buxton was showing improvement in his cervical complaints and headaches. He did have continued back pain, but sensory and motor function in his lower extremities were normal. In his June 11 visit with Buxton, Dr. Kang noted back pain and headaches, with complaints of nausea associated with the pain.

In the interim, Buxton resigned from the police department on advice of his defense counsel following an investigation of events that led to his plea of nolo contendere to malfeasance in office. Following his resignation on June 9, 2004, Buxton filed a claim for unemployment compensation on June 29, 2004. This was introduced into evidence at Buxton's first trial, and subsequently reintroduced at the second trial, along with the remainder of the record from the first trial. In his unemployment claim, Buxton asserted that there was no reason he could not accept work at that time. However, records admitted at the first trial indicate that following the date of the accident, Buxton missed ten days from work.

Buxton continued to treat with Dr. Kang, who saw him again on August 16, 2004. On this visit, Buxton demonstrated low back complaints associated with sluggish deep tendon reflexes and diminished sensory and motor function. Dr. Kang was concerned by these findings and decided at this point to order the MRI. This test was performed, but Buxton did not return to see Dr. Kang to discuss the results.

2

However, Dr. Kang did issue on his prescription pad a two-page note addressed, "To whom it may concern," outlining the course of Buxton's treatment, and advising the addressee that Buxton needed time to recover from the accident.

On April 26, 2005, plaintiff began treatment with Dr. Clark Gunderson, a Lake Charles orthopedic surgeon. Buxton's complaints to Dr. Gunderson included neck pain, headaches and low back pain. He excused Buxton from work and prescribed physical therapy and medications. Buxton returned to Dr. Gunderson one other time, on May 26, 2005. At that time, he was complaining of right leg pain, hip pain, and low back pain. No neck or head complaints are noted in that record. Dr. Gunderson recommended that plaintiff undergo a CT myelogram and EMG of the right leg. These studies were apparently never performed; indeed, there is no further medical treatment indicated from May 26, 2005 to February 25, 2007.

On February 25 Buxton was injured when his vehicle collided with a cow. He sustained extensive injuries and was transported first to Lake Charles Memorial Hospital, then to LSU Medical Center in Shreveport for surgery to repair facial fractures. Buxton then went to Dr. Dale Bernauer, another Lake Charles orthopedic surgeon, with complaints of low back pain; leg pain, weakness and numbness; and neck pain referred into the shoulders and arms, with numbness and tingling in the arms. Dr. Bernauer ordered an MRI that demonstrated disc herniations at C3-4, C4-5, C5-6, C6-7, and L3-4. Dr. Bernauer opined that Buxton needs cervical and lumbar fusions. Dr. Bernauer's records were introduced at trial, but those records express no opinion connecting the need for surgery and the May 7, 2004 accident.

On September 27, 2007, Buxton again sought treatment with Dr. Gunderson. Dr. Gunderson reviewed the MRIs ordered by Dr. Bernauer, and concurred with the

3

recommendation of cervical fusion, but thought further testing was required before he could recommend a lumbar fusion. However, he testified that Buxton is going to eventually require a laminectomy and fusion with pedicle screws.

At trial, the entire record of the previous proceeding was introduced, as was the deposition of Dr. Gunderson, the certified medical records of Buxton's treatment at Lake Charles Memorial, and certified records reflecting Buxton's treatment at LSU Medical Center in Shreveport. Following submission, the workers' compensation judge rendered oral reasons in favor of Buxton, finding temporary total disability and ordering Iowa to provide medical treatment with Dr. Gunderson.

## ASSIGNMENTS OF ERROR

Iowa appeals, urging that Buxton failed to carry his burden of proof and that the workers' compensation judge erred in awarding temporary total disability benefits and medical treatment with Dr. Gunderson for Buxton's lumbar spine. Buxton appeals urging error on the part of the workers' compensation judge in failing to award penalties and attorneys fees.

## ANALYSIS

*Medical treatment and indemnity:* A hearing office's decision that a claimant has met his burden of proof constitutes a factual determination. As such, this determination will not be overturned on review absent manifest error. An appellate court will set aside a factual finding by a hearing officer only if the record reveals there was no reasonable basis for the finding and that the finding was clearly wrong. *Stobart v. State Through Dep't of Transp. and Dev.*, 617 So.2d 880 (La. 1993). "In order to reverse a factual finding of a workers' compensation judge, the appellate court must determine that a reasonable factual basis does not exist in the record to

4

support the finding of the workers' compensation judge and that the record establishes the finding is clearly wrong or manifestly erroneous." *Clay v. City of Jeanerette*, 1999-1421, p. 6 (La.App. 3 Cir. 5/31/00) 768 So.2d 609, 612-13, *writ denied*, 00-2006 (La. 10/27/00), 772 So.2d 124.

Louisiana Revised Statute 23:1221(1)(c) provides that an employee who seeks temporary total disability benefits must prove by clear and convincing evidence, without a presumption of disability, that he "is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment." Uncontradicted expert testimony regarding the underlying facts is not binding on the court, but may not be lightly disregarded by the judge. *Morvant v. Smith*, 463 So.2d 75 (La.App. 3 Cir. 1985). " However, even expert testimony as to the ultimate facts, although uncontradicted, is not binding on the court." *Id.*, at 77.

Iowa's appeal, while couched in terms of three assignments of error, essentially boils down to its contention that the treatment following the incident in which Buxton struck the cow was not causally related to the motorcycle collision. If the treatment following the cow crash is related to the motorcycle crash, Buxton is entitled to indemnity and medical treatment, for as the second circuit in *Lemons v. Georgia Pacific Corp.*, 42,950, p. 6 (La.App. 2 Cir. 2/13/08), 976 So.2d 307, *writ denied* 08-0587, 08-0590 (La. 5/2/08), 979 So.2d 1288, 1289:

> The law is well settled that an aggravation of a work-related injury is regarded as compensable and as resulting from the initial work accident even though it occurs away from work and even after the employment is terminated. *Kelly v. City of New Orleans,* 414 So.2d 770 (La.1982);

*Hollingsworth v. East Baton Rouge Parish School Bd.,* 94,0518 (La.App. 1st Cir.12/15/95), 666 So.2d 376, *writ denied,* 96-0165 (La. 3/15/96), 669 So.2d 422; *Hanover Ins. Co. v. Allstate Ins. Co.,* 554 So.2d 1261 (La.App. 1st Cir.1989); *Hughes v. General Motors Guide Lamp Division,* 469 So.2d 369 (La.App. 2 Cir. 1985). It would be a compensable injury for workers' compensation purposes, and the employer would be obligated to continue paying benefits. *Kelly,*414 So.2d 770*; Stewart v. Hospitals Affiliates Int'l, Inc. of Baton Rouge,* 404 So.2d 944 (La. 1981).

Iowa contends that a comparison of the severity of the on-the-job accident with the collision with the cow leads to the conclusion that Buxton's condition was the result of the latter. Indeed, the photographs of the police cruiser taken after the motorcycle struck it do demonstrate extremely minor damage to the car. The injuries sustained by Ms. Buxton after he hit the cow, on the other hand, were very severe, necessitating his transportation to the LSU Medical Center in Shreveport for surgery.

Iowa also points out that in his unemployment compensation claim, Buxton affirmed that there was no reason he could not work.

While a reviewing court might have reached a different result than the workers' compensation judge did, unless this court can conclude that there existed no reasonable basis for the trier's findings of fact, the *Stobart* test of manifest error is not met. *Stobart,* 617 So.2d 880. Dr. Gunderson's uncontradicted testimony that Buxton's lumbar injuries were aggravated by the collision with the cow forms a reasonable basis for the workers' compensation judge's ruling. That testimony is bolstered by Dr. Kang's findings of consistent low back complaints and neurosensory deficits. Further, if the cow incident is an intervening and superceding cause of Buxton's complaints–and it decidedly is with regard to his cervical condition–it would negate the affirmation by Buxton of being able to work contained in his unemployment compensation claim that greatly predated the cow incident.

6

*Penalties and attorneys fees:* An employer or insurer must pay medical benefits within sixty days of receiving written notice thereof. La. R.S. 23:1201(E).

The first installment of compensation payable for temporary total disability, permanent total disability, or death is due on the fourteenth day after the employer or insurer gains knowledge of the injury or death, on which date all such compensation then due shall be paid. La. R.S. 23:1201(B). Failure to pay such benefits shall result in the imposition of a penalty; however, the penalty is not imposed if the claim is reasonably controverted or if nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F)(2). When the employer or insurer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence, a claim is reasonably controverted . *Davis v. Jones Baldwin Music Co.,* 27,545 (La.App. 2 Cir. 11/1/95), 662 So.2d 803. *Nowlin v. Breck Const. Co.,* 30,622 (La. App. 2 Cir., 6/24/98), 715 So.2d 112. The decision to award penalties and fees is subject to an abuse-of-discretion standard. *Id.* When a claim is reasonably controverted, attorneys fees and penalties are not appropriate. *Davis,* 662 So.2d 803.

The court feels that Iowa did present evidence sufficient to reasonably counter Buxton's claim. There was no treatment of Buxton for any of his complaints between May 26, 2005 and February 25, 2007. A comparison of the two collisions would provide a factual basis for reasonably controverting Buxton's claim. Therefore, this court can find no error in the workers' compensation judge's denial of penalties and attorneys fees.

Buxton also seeks attorneys fees for the appeal. It would be incongruous to impose penalties or award attorneys fees in a situation in which both the employer

7

and employee appeal the workers' compensation judge's ruling and neither prevails.

Costs of the appeal, however, are assessed against Iowa.

**AFFIRMED**.